IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

FILED
LODGED
ENTERED
RECEIVED

FEB 21 2002

CLERK AT GREENBELT
D.ST... ... ... COURT
DISTRICT OF MARYLAND
BY
DEPUTY

TRACY ROBBISON,                    )
                                   )
        Plaintiff,                 )
                                   )
v.                                 )    CIVIL ACTION NO. CCB-00-1515
                                   )    (Magistrate Judge Charles B. Day)
ERNEST ANACKER, et al.,            )
                                   )
        Defendants.                )

## MEMORANDUM OPINION DENYING DEFENDANT'S
## MOTION FOR NEW TRIAL AS TO DAMAGES ONLY OR REMITTITUR

Before the Court is Defendant Ernest Anacker's Motion for New Trial As To Damages

Only or Remittitur ("Defendant's Motion")(Docket Item No. 30). The Court has reviewed

Defendant's Motion and the opposition, reply and Supplement to Plaintiff's Brief in Opposition

thereto.[1] No hearing is deemed necessary. Local Rule 105.6 (D. Md.). The Court hereby denies

Defendant's Motion.

On December 18, 2001, a jury trial began wherein Plaintiff alleged injuries as a result of a

motor vehicle collision which occurred on October 31, 1997. While Defendant's Motion accepts

the jury's finding with respect to liability, Defendant contends that Plaintiff's expert testified

beyond the limitations imposed by his written report provided as part of the core discovery, and

that such testimony should have been excluded under Fed. R. Evid. 702 and the limitations upon

expert testimony in federal courts as announced in the *Daubert/Kumho Tire* litany of cases. See

*Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), *Kuhmo Tire Co., Ltd. v.*

*Carmichael*, 526 U.S. 137 (1999). Defendant's position focuses on the existence, *vel non,* of the

---

[1]    Pursuant to Local Rule 105.2a, the Court places no reliance upon this supplemental filing by Plaintiff.
In pertinent part, this Rule states "unless otherwise ordered by the Court, surreply memoranda are not permitted to
be filed." Even if permitted, the most substantive document therein is a letter from a neurological surgeon in
support of Plaintiff's contentions at trial. This letter is not in the affidavit form required by Fed. R. Civ. P. 59(c).



permanent injuries claimed by Plaintiff. Defendant asserts that the testimony of Plaintiff's

treating physician, Dr. Edwin Fulton, was prejudicial to the extent that it spoke of the need for

Plaintiff to have future surgical intervention.

## I.     Dr. Fulton's testimony as a fact witness was not required to be disclosed under Federal Rules of Civil Procedure 26(a)(2)(B).

During the discovery phase of this litigation, Plaintiff made a Rule 26(a) disclosure that

Dr. Fulton was expected to testify regarding Plaintiff's permanent injuries and to any future care

and treatment incidental to the injuries incurred. As a result of reviewing this material,

Defendant Anacker decided to have Plaintiff submit to a medical examination by his expert.

Defendant correctly asserts that in this disclosure no reference was made to the need for a

"diskectomy"[2] or surgery of any nature. Defendant elected not to conduct a deposition of Dr.

Fulton.

On March 5, 1998, Plaintiff submitted to a series of magnetic resonance imaging ("MRI")

tests, the results of which failed to disclose any evidence of disc herniation or spinal stenosis. It

was determined that the cervical spine was within normal limits. On January 26, 2000, Plaintiff

submitted to an additional MRI of her cervical spine which was determined to be an "essentially

normal MRI of the cervical spine with a tiny diffuse bulge at C4-C5." Dr. Fulton was not

Plaintiff's treating physician at the time of the second MRI.

During the trial, Plaintiff attempted to elicit testimony to show a causal connection

between the bulging disc from the second MRI and the motor vehicle collision. Defense counsel

properly objected to such an opinion and said objection was sustained. Nonetheless, Dr. Fulton

was allowed to express an opinion to which Defendant ascribes much error. Dr. Fulton in

---

[2]     The excision of an intervertebral disk. Dorland's Illustrated Medical Dictionary  627 (24th ed. 1978).

2

essence stated that due to the progressive nature of the injury, deterioration of the disc and the

radical change in the curvature of Plaintiff's spine as reflected by x-rays, a removal of the disc

and fusion of the disc in the future would be necessary. This opinion is a far cry from the *ipse*

*dixit* reservations expressed by the court in *Kumho Tire*.

Defendant claims that this testimony regarding the future removal of a disc and/or fusion

should have been excluded since these opinions were not made known in Dr. Fulton's expert

disclosure. The controlling issue is whether Dr. Fulton's opinion was reached as a result of his

involvement with Plaintiff as her treating physician. If it was acquired as part of the course of

treatment, then Dr. Fulton's testimony was given as a factual witness and the failure to make a

timely or complete expert disclosure under the Federal Rules is a non-event. Conversely, if his

opinion was obtained as a result of information provided from other sources outside of the course

of treatment, he is a retained expert and the testimony should be excluded due to its failure to be

part of the expert disclosure statement. See *Sullivan v. Glock, Inc.*, 175 F.R.D. 497 (D. Md.

1997), and *Ngo v. Standard Tools and Equipment Co., Inc.*, 197 F.R.D. 263 (D. Md. 2000).[3]

There is no dispute that Dr. Fulton, as Plaintiff's treating physician, is permitted to speak

to Plaintiff's medical condition, her diagnosis, prognosis, and extent of disability. Since Dr.

Fulton's statement regarding the need for removal of a disc and fusion in the future is a statement

regarding Plaintiff's prognosis and the extent of disability, then an expert disclosure was not

required.

---

[3]     Dr. Fulton also spoke of additional future care and treatment Plaintiff would need, without objection.
Nonetheless, the verdict sheet addressed solely the issues of the negligence, past medical expense, past loss of
income, and past as well as future pain and suffering. Plaintiff was so limited because there was no disclosure of
expected expert testimony regarding future medical expenses. Since such testimony is beyond the bailiwick of
acceptable testimony from a treating physician, these opinions were governed by the disclosure requirements of the
Federal Rules.

3

There was no testimony to suggest that the basis of Dr. Fulton's opinion was a review of records obtained after treatment, including but not limited to the second MRI series. Dr. Fulton affirmatively stated his basis, including his objective findings, leading to his opinion regarding the continued deterioration of the disc.[4]

It is not unusual for a treating physician to express the need for future surgical intervention to a patient. While the disclosure did not make mention of the need for surgery, the discovery of this opinion could have easily been developed in deposition. Defendant's reliance upon the expert disclosure in this instance was misplaced.[5] In the event that Dr. Fulton was a retained expert, then Defendant's argument would be controlling. This Court does not find a violation of the core discovery rules set forth in Fed. R. Civ. P. 26(a).

## II.    Neither the *Daubert* line of cases, nor Federal Rule of Civil Procedure 702 requires the exclusion of Dr. Fulton's testimony regarding the need for surgery.

Defendant correctly notes that under *Daubert* and it's progeny, the Court has a gatekeeping function regarding expert testimony. The principals set forth in Fed. R. Civ. P. 702 do not reflect a change in the law, but merely a codification of the *Daubert* and *Kumho Tire* decisions. Whether by case law or by the Federal Rules, these principles were binding upon the Court at the time of the pretrial conference and the trial. Accordingly, it is immaterial to announce with great fanfare that Rule 702 was so recently amended.

---

[4]    The only information before the jury with respect to a disc bulge was provided by Defendant's expert, Dr. Edward Reahl.

[5]    Plaintiff indicates that during her deposition of November 4, 1999, that the possibility of surgery was previously expressed by Dr. Fulton. Plaintiff stated that "Dr. Fulton suggested that it's a possibility" in response to a question regarding surgery. Despite this knowledge, Defendant still elected not to take Dr. Fulton's deposition.

Defendant does not and cannot object to the qualifications of Dr. Fulton to offer expert testimony at trial. Neither party raised any such concerns about the admissibility of expected testimony during the pretrial conference or by way of a *motion in limine*. Nor was there any meaningful challenge by Defendant to the qualifications of Dr. Fulton to provide expert opinions regarding permanent injuries. While *Daubert* requires that in the face of a proffer of expert scientific testimony the Court is to conduct a preliminary assessment on the issue, including whether a scientifically valid methodology can be properly applied in the case, no such proffer was made here because neither party had any concerns. It is being raised for the first time here in the post-verdict motions by Defendant. In fact, both parties affirmatively acknowledged that there were no *Daubert* issues in this case.[6]

The offered testimony related to the need for surgery. Defendant's only *Daubert* contention is that from his vantage point Dr. Fulton's opinion was based upon a review of a MRI series two years after the event in the face of a previously clean MRI series. No such testimony was elicited during either direct or cross-examination. While *Daubert* speaks about the need for testing, peer review, rates of error, and general acceptance within the scientific community, these factors are not exhaustive but illustrative with certain factors weighing more heavily in certain fields of expertise. *Daubert* correctly focuses on the main objective to "make certain that an expert . . . employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Daubert,* at 152. Said expert is not required to give

---

[6]     To the Court's knowledge this issue was quite a surprise, yet Plaintiff's counsel surely had intentions of pursuing the line of questioning and defense counsel, while expressing outrage and surprise was "on the ready" objecting vociferously. Plaintiff has also made it known, without dispute, that Defendant was aware as late as December 11, 2001, of the probability of pursuing this issue. As such, Defendant did have the means to raise this matter with the Court before the witness testified. The Court had no opportunity to perform its gatekeeper responsibilities until the moment of truth, as the testimony was elicited and the objection was raised, and even then the issue was not framed as a *Daubert* issue.

the "right answer" but an intellectually reasonable one not based upon junk science. There is no

reason to believe, on these facts, that Dr. Fulton's testimony with the explanation and support

provided thereto, is outside the standards of his field. Simply put, Dr. Fulton believes that over

time Plaintiff's condition would deteriorate, requiring surgery and Defendant's expert, Dr. Reahl,

disagrees. Dr. Fulton identified the objective factors for his opinion, including the examination

of x-rays and Plaintiff's continuing pain to name a few. It is not essential "that a medical expert

must always cite published studies on general causation in order to reliably conclude that a

particular object caused a particular illness." *Heller v. Shaw Indus.*, 167 F.3d 146, 155 (3d Cir.

1999). The jury had these competing views before it along with the relative qualifications of the

physicians and their motivations to testify. The jury elected to accept the testimony of Dr. Fulton

as more probative.[7]

Defendant's reliance upon *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194 (4th Cir. 2001)

is also misplaced. In Cooper, the testifying expert was knowledgeable of a diagnostic

methodology which he employs during the regular course of his treatment of patients. However,

the physician digressed from that known and accepted protocol and attempted to offer opinions

in a vacuum. There is no suggestion of a deviation from a known methodology by Dr. Fulton,

nor has the defense suggested a different methodology which is more accepted in the general

scientific community.

---

[7]    In its Motion for New Trial Defendant supplies an affidavit by Dr. Ammerman to further refute the
testimony offered by Dr. Fulton. This affidavit is out-of-bounds in that it is not truly newly discovered evidence,
but merely an attempt to rehash the issues before the trier of fact. As easily as Defendant is able to obtain this
opinion in support of his position, Plaintiff is likewise able to find additional testimony in support of her position. If
the Court considered Dr. Fulton's affidavit and the position set forth in the supplemental filing by Plaintiff from Dr.
George Matthews, a neurologic surgeon, the Court would continue to be faced with competing views from experts
regarding the need for surgery based upon a clean MRI. This affidavit does not swing the *Daubert* analysis to
Defendant's favor in a dispositive fashion.

> As a general rule, the factual basis of an expert opinion goes to the
> credibility of the testimony, not the admissibility, and it is up to the
> opposing party to examine the factual basis for the opinion in
> cross-examination. Only if the expert's opinion is so
> fundamentally unsupported that it can offer no assistance to the
> jury must such testimony be excluded.

*Hose v. Chicago Northwestern Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1996)(internal citations

and quotations omitted). Again, at best what is presented here is that one physician suggests that

the condition Plaintiff suffers from is a deteriorating one requiring surgery, and the other

physician disagrees. It is for this very reason that we have juries to make determinations of fact.

## III.    Additional procedural concerns.

Defendant also concerns itself greatly about the unexpected cancellation of the scheduled

*de bene esse* deposition of Dr. Fulton. This deposition was to occur shortly before the trial date

and as a result of its cancellation, Dr. Fulton testified before the jury live. Defendant contends

that his hands were therefore tied since he had committed to having his expert witness testify in a

*de bene esse* videotaped format. The defense can claim no hardship from this turn of events

given that the purpose of the *de bene esse* deposition was for the preservation of trial testimony,

not for discovery. The defense is still wedded to its strategic decision not to conduct the

discovery deposition of Dr. Fulton prior to his testimony at trial. Therefore, Defendant's non-

discovery of the full extent of Dr. Fulton's opinions is of its own making.

## IV.    Conclusion

The Court has found no violation of the core discovery requirements, nor the principles

set forth in *Daubert* or in Fed. R. Civ. P. 702. The verdict of the jurors was based the evidence at

trial regarding the permanency of Plaintiff's injuries as a result of a motor vehicle collision with

Defendant. Plaintiff's expert's suggestion of the need for surgery based upon a continued

deterioration of her disc is within the expected spheres of testimony of a treating physician and

7

not tantamount to junk science. The Court does not see a reasonable basis for granting

Defendant's Motion for a New Trial as to Damages or for Remittitur under Fed. R. Civ. P. 59.

Accordingly, Defendant's Motion is DENIED. A separate Order to this effect shall be entered.

Feb 21, 2002
Date

CHARLES B. DAY
UNITED STATES MAGISTRATE JUDGE

8